UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **KEVIN MERCHANT, JR.,** | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| **EQUIFAX INFORMATION SERVICES, LLC,** | ) ) ) ) |
| Defendant. | ) ) |

CIVIL ACTION
NO. 4:20-11136-TSH

### ORDER AND MEMORANDUM ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 37) and MOTION TO STRIKE (Docket No. 62)

**July 18, 2022**

**HILLMAN, D.J.**

Kevin Merchant, Jr. ("Plaintiff") commenced this action against Equifax Information Services, LLC ("Equifax"), alleging willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. Equifax moves for summary judgment, (Docket No. 37), and to strike an affidavit submitted by Plaintiff in sur-reply to the motion for summary judgment, (Docket No. 62). For the following reasons, the Court ***grants in part*** and ***denies in part*** the motion for summary judgment and ***denies*** the motion to strike.

### Background

In February 2020, Plaintiff sought to refinance his home mortgage. To obtain refinancing, he allowed a mortgage broker to request his credit information from Equifax, a consumer reporting agency ("CRA") as defined by the FCRA. Equifax refused to provide Plaintiff's credit information to the broker, telling the broker that Plaintiff's account was "blocked." Plaintiff avers that he never

requested a block on his account, and Equifax does not contend otherwise. Instead, Equifax acknowledges that it mistakenly confused Plaintiff's Equifax online profile with the online profile of another individual with a similar name.

Over the course of nearly three months, Plaintiff contacted Equifax over three dozen times, and spent over twenty hours on the phone with Equifax representatives, to try to resolve the purported block and enable the broker to access his credit information. In the time it took Plaintiff to get Equifax to release his credit information to the broker, Plaintiff missed out on hundreds of dollars of savings on his monthly mortgage payments.

In June 2020, Plaintiff sued Equifax, alleging that Equifax violated two provisions of the FCRA: one that requires CRAs to follow reasonable procedures to assure maximum possible accuracy of the information contained in consumer reports, *see* 15 U.S.C. § 1681e(b), and another that requires CRAs to reasonably reinvestigate disputed items of information in consumers' files, *see* 15 U.S.C. § 1681i.[1] Count I of Plaintiff's complaint alleges that Equifax willfully committed these violations. *See* 15 U.S.C. § 1681n. Count II of Plaintiff's complaint alleges that Equifax negligently committed these violations. *See* 15 U.S.C. § 1681o.[2] In August 2021, Equifax moved for summary judgment. (Docket No. 37).

**Legal Standard**

---

[1] Plaintiff also alleges that Equifax violated a third provision, 15 U.S.C. § 1681g, but Plaintiff effectively abandoned this claim in response to Equifax's motion for summary judgment. *See Nikijuluw v. Gonzales*, 427 F.3d 115, 120 n.3 (1st Cir. 2005); *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995).

[2] Count III of Plaintiff's complaint requests that Equifax be restrained from treating Plaintiff as anyone but himself. Plaintiff has not responded to Equifax's argument that the FCRA does not authorize injunctive relief, *see Gagnon v. Pa. Higher Educ. Assistance Agency*, 2020 WL 7265843, at *5-6 (D. Me. Dec. 10, 2020), effectively abandoning this request.

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue is "genuine" when a reasonable factfinder could resolve it in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it may affect the outcome of the suit. *Id.* When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation omitted).

## Discussion

### 1. Standing

Equifax argues that Plaintiff lacks Article III standing. Plaintiff initially relied on inadmissible hearsay to support his theory of standing. In a sur-reply allowed by the Court, however, Plaintiff produced an affidavit from the broker with whom he was working to refinance his home mortgage, indicating that Plaintiff was unable to obtain refinancing for months due to the purported freeze on his Equifax account.

Equifax moves to strike the broker's affidavit. (Docket No. 62). Equifax argues that the affidavit violates Local Rule 7.1(b)(2) and Federal Rule of Civil Procedure 6(c)(2). In the interest of avoiding a dismissal on jurisdictional grounds for technical reasons, *cf. Odishelidze v. Aetna Life & Cas Co.*, 853 F.2d 21, 24 (1st Cir. 1988) (noting that "technical defects in jurisdictional pleadings usually are not fatal"), the Court will excuse Plaintiff's noncompliance with Local Rule 7.1(b)(2), *see Air Line Pilots Ass'n v. Prescision Valley Aviation, Inc.,* 26 F.3d 220, 224 (1st Cir. 1994) (noting that district courts "enjoy broad latitude in administering local rules"). Moreover, consistent with Federal Rule 6(c)(2), the Court already permitted Plaintiff to file the broker's

3

affidavit via his sur-reply. (Docket No. 64). Equifax's motion to strike, therefore, is <u>denied</u>. Considering the broker's affidavit, the Court finds that Plaintiff has established Article III standing.

### 2. *15 U.S.C. § 1681e(b)*

Plaintiff alleges that Equifax willfully and negligently violated 15 U.S.C. § 1681e(b), which provides that when a CRA prepares a "consumer report," it must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See McIntyre v. RentGrow, Inc.*, 34 F.4th 87, 91 (1st Cir. 2022). To prevail on a claim of noncompliance with § 1681e(b), a plaintiff must establish, *inter alia*, that inaccurate information was included in a consumer report, and that the inaccuracy was due to the CRA's failure to follow reasonable procedures. *See Richardson v. Fleet Bank of Mass.*, 190 F. Supp. 2d 81, 85 (D. Mass. 2001).

Equifax argues that it did not prepare a consumer report. Under the FCRA, a "consumer report" is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness . . . used or expected to be used . . . as a factor in establishing the consumer's eligibility for . . . credit." 15 U.S.C. § 1681a(d)(1). The evidence viewed in Plaintiff's favor shows that Equifax told Plaintiff's mortgage broker that Plaintiff's Equifax account was "blocked," indicating that Equifax had credit information on Plaintiff it could not disclose. A jury reasonably could find that such information bears on Plaintiff's credit worthiness. As this case demonstrates, the very existence of a block on a consumer's account may cause a lender not to provide credit to that consumer.

Communication about whether an account is "blocked" is different than communication about whether an account exists. In *Maria E v. Experian Information Solutions, Inc.*, 2018 WL 2085221, at *2 (E.D. Ky. Feb. 27, 2018), the plaintiff legally changed her name to "Maria E," but

4

the defendant CRA's database did not support the use of single initial surnames. When a lender contacted the defendant for credit information on "Maria E," the defendant responded that no report was available. *See id.* at 4-5. The court concluded that the "no report" communication was not a "consumer report" within the meaning of the FCRA. *See id.* at *5; see also Bickley v. Dish Network, LLC*, 751 F.3d 724, 729 (6th Cir. 2014) (agreeing that "Declined No Hit" responses to credit inquiries are not "consumer reports"). Here, Equifax did not communicate that it had no report on Plaintiff; Equifax communicated that it could not share its report on Plaintiff. Faced with this information, "it is logical to assume that the cautious thing for [the broker] to do would be to deny Plaintiff credit." *Thompson v. Equifax Credit Info. Servs., Inc.* 2001 WL 34142847, at *3 (M.D. Ala. Dec. 14, 2001). Accordingly, viewing the facts in Plaintiff's favor, a jury reasonably could find that when Equifax communicated to the broker that Plaintiff's account was blocked, Equifax prepared a "consumer report" within the meaning of the FCRA.

Equifax also argues that its reporting was not inaccurate. To be sure, it is not always "inaccurate" under § 1861e(b) for a CRA to exclude information from a consumer's credit report. *See Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 568 (5th Cir. 2020). But the inaccuracy alleged here is not merely Equifax's failure to send Plaintiff's credit information to the broker; it is also Equifax's explanation for its inability to do so. Plaintiff avers that he never requested a block on his account, and Equifax does not contend otherwise. Yet Equifax told the broker that Plaintiff's account was blocked. From this, a jury reasonably could find that Equifax's reported information was inaccurate.

Equifax further argues that Plaintiff has no evidence of its procedures. To the contrary, Plaintiff points to Equifax's Mixed File Disputes policy, which sets forth procedures for when a consumer contends that items in his file belong to someone else, which the policy states can occur

when two individuals have similar names. In any event, Plaintiff need not identify a specific procedure to survive summary judgment. *See Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 52 (D.C. Cir. 1984) ("In certain instances, inaccurate credit reports by themselves can fairly be read as evidencing unreasonable procedures, and we hold that in such instances plaintiff's failure to present direct evidence will not be fatal to his claim."). Here, the broker attempted to access Plaintiff's credit information from Equifax, but Plaintiff's account was locked. Plaintiff began repeatedly contacting Equifax to resolve the issue, and Equifax representatives informed Plaintiff that there was no freeze on his account. In all, Plaintiff spent over twenty hours on the phone with Equifax representatives. More than one month later, Equifax told Plaintiff's broker that Plaintiff's account was still blocked. From this evidence, a jury reasonably could infer that Equifax failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's "consumer report," as described above. *See Richardson*, 190 F. Supp. 2d at 86 (finding that at least three prior notices of errors were sufficient to create a factual issue on the reasonableness of the agency's procedures). Thus, summary judgment on the § 1861e(b) aspect of Plaintiff's claims is <u>denied</u>.

### 3. 15 U.S.C. § 1681i

Plaintiff also alleges Equifax willfully and negligently violated is 15 U.S.C. § 1861i. While § 1681e(b) (discussed above) concerns the accuracy of "information," § 1681i concerns the accuracy of "item[s] of information," which are "credit entries, such as an account, bankruptcy case, civil suit, or tax lien." *Hammer*, 974 F.3d at 569. Under § 1861i, "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer," the CRA shall "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." *See DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008). Equifax argues that Plaintiff did not dispute any "item of information" in

his file.  Indeed, information about whether an account is subject to a block or security freeze is not an "item of information" in the consumer's file; rather, it is general information concerning the status of the consumer's file.  *See Edeh v. Equifax Info. Servs., LLC*, 919 F. Supp. 2d 1006, 1012 (D. Minn. 2013).  Accordingly, a dispute over whether an account accurately is described as blocked is not covered by § 1681i.  *See Abdallah v. LexisNexis Risk Solutions FL Inc.*, 2021 WL 1209419, at *9 (E.D.N.Y. 2021).  Therefore, summary judgment on the § 1681i aspect of Plaintiff's claims is granted.

### 4.  Willful violation

Equifax argues that it did not willfully violate the FCRA.  A CRA willfully violates the FCRA if its reading of the statute is "objectively unreasonable."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).  In other words, to constitute a willful violation, the CRA's actions must entail "an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).  Equifax's understating of whether communication concerning the existence of a block is a "consumer report" within the meaning of § 1861e(b) was not objectively unreasonable, especially given the somewhat conflicting, yet distinguishable, case law.  *See, e.g.*, *Maria E*, 2018 WL 2085221, at *4-5; *Edeh*, 919 F. Supp. 2d at 1012; *Thompson*, 2001 WL 34142847, at *3.  Accordingly, summary judgment on the entirety Plaintiff's willful violation claim (Count I) is granted.

## Conclusion

For the reasons stated, Equifax's motion for summary judgment is ***granted in part*** and ***denied in part***.  Plaintiff may proceed on his claim that Equifax negligently violated 15 U.S.C. § 1681e(b).  Summary judgment for Equifax otherwise is granted.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN
DISTRICT JUDGE**