2022 WL 392848
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Robert SULLIVAN, Plaintiff,
v.
EXPERIAN INFORMATION SOLUTIONS, INC., Rushmore Loan Management Services, LLC, Selene Finance LP, and Does 1 to 10, Inclusive, Defendants.

CIVIL ACTION NO. 16-11719-MPK[1]
|
Signed 02/09/2022

**Attorneys and Law Firms**

David A. Chami, Pro Hac Vice, Price Law Group, APC, Scottsdale, AZ, Nicola S. Yousif, Brockton, MA, for Plaintiff.

Amy B. Hackett, Richard E. Briansky, Peckar & Abramson, P.C., Richard C. Demerle, John T. Precobb, Demerle Hoeger LLP, Boston, MA, Walter H. Porr, Jr., Lake Worth, FL, for Defendant Selene Finance, LP.

MEMORANDUM AND ORDER ON PLAINTIFF'S PETITION FOR AWARD OF ATTORNEYS' FEES AND COSTS (#185).

KELLEY, U.S.M.J

I. Introduction.

*1 On August 23, 2016, Massachusetts-based counsel Nicola Yousif filed a four-count complaint on behalf of Robert Sullivan alleging, *inter alia*, that Selene Finance LP (Selene), Rushmore Loan Management Services, LLC (Rushmore) and Experian Information Services, Inc. (Experian) violated the Fair Credit Reporting Act (the FCRA), 15 U.S.C. § 1681 et seq., and that Selene and Rushmore violated the Fair Debt Collection Practices Act (the FDCPA), 15 U.S.C. § 1692 et seq. (#1 ¶¶ 1, 85-107.) Arizona-based counsel David Chami was later admitted *pro hac vice*. (#24.) Attorney Chami prepared the complaint and did most of the work during the litigation, although Attorney Yousif also participated.

On October 18, 2017, Experian filed a notice of settlement. (#43.) On December 4, 2017, Experian and Sullivan stipulated to the dismissal of all claims with prejudice and each party to bear its own costs and attorneys' fees. (#64.)

On November 6, 2017, Sullivan and Rushmore stipulated to the dismissal of one claim. (#54.) On September 6, 2018, they stipulated to dismissal of all claims with prejudice and each party to bear its own costs and attorneys' fees. (#102.)

As was its right, Selene forcefully defended against Sullivan's allegations, prolonging the litigation. In 2017, Selene moved for summary judgment. (#45.) Sullivan opposed. (#82.) After a hearing in 2018 (#97), Sullivan and Selene were referred to mediation. (#98.) Selene's motion for summary judgment was denied without prejudice to renewal if mediation were unsuccessful. (#100.) Mediation was unsuccessful. (#107.) Selene renewed its motion for summary judgment, relying on its earlier pleadings and argument. (#113.) Sullivan opposed. (#114.) In 2019, undersigned recommended that Selene's motion for summary judgment be denied. (#126.) Selene objected. (#127.) Sullivan replied. (#128.) In 2020, Judge Wolf adopted undersigned's recommendation. (##132, 133.) Selene moved to certify the order for interlocutory appeal. (#145.) Sullivan opposed. (#146.) The motion was denied. (#150.)[2]

Trial was scheduled for mid-2021. (#152.) Sullivan and Selene were again referred to mediation, which was again unsuccessful. (##155, 158.) Trial was rescheduled for late 2021. (#163.) Selene retained new counsel. (##165, 166, 167.) It then made an offer of judgment pursuant to Fed. R. Civ. P. 68: $30,000 "plus reasonable attorneys' fees and costs as determined by the Court." (#177.) Sullivan accepted. (#177-1.)

But the battle continues. Selene now forcefully defends against Sullivan's request for $365,195.00 in attorneys' and paralegal fees and $4,576.39 in costs. *See* ##185, 188.[3] In Selene's view, *see* #187, Sullivan is entitled to about one-third of the requested fees ($120,311.80) and slightly more than half of the requested costs ($2,651.70). Argument was held on February 1, 2022. (#190.) The court has carefully reviewed the parties' submissions and disagrees with both of them in a number of respects. Mindful that its aim is to "do rough justice, not achieve auditing perfection," *Pérez-Sosa v. Garland*, 22 F.4th 312, 322 (1st Cir. 2022) (punctuation and

citation omitted), the court awards $219,275.00 in attorneys' and paralegal fees and $2,310.73 in costs.

II. Law.

**\*2** Like many other federal statutes, the FCRA and FDCPA contain fee-shifting provisions.[4] "Successful" plaintiffs under the FCRA and FDCPA include those who prosecute claims to settlement. *Fallen v. GREP Southwest, LLC*, 247 F. Supp. 3d 1165, 1204-1205 (D.N.M. 2017); *Nelson v. Hecker*, No. 09-cv-10513-JLT, 2010 WL 1741072, at \*1 n.1 (D. Mass. April 28, 2010).

That successful plaintiffs are entitled to fees under the FCRA and FDCPA does not mean that they are entitled to requested fees; they are only entitled to "reasonable" ones. *French v. Corporate Receivables, Inc.*, 489 F.3d 402, 403 (1st Cir. 2007). "Reasonable" fees are those "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). *Perdue* involved 42 U.S.C. § 1988 but Supreme Court precedent construing "reasonable" fees applies to all similar federal fee-shifting statutes. *Pérez-Sosa*, 22 F.4th at 321.

The "method of choice" for calculating reasonable fees under a federal fee-shifting statute is the lodestar method. *Pérez-Sosa*, 22 F.4th at 321 (quoting *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015)); *see, e.g.*, *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 53 F. Supp. 3d 312 (D. Mass. 2014) (applying lodestar under FDCPA); *Fallen*, 247 F. Supp. 3d 1165 (under FCRA and FDCPA). A lodestar amount is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

To calculate the lodestar amount, the court tallies the number of hours reasonably expended on the litigation, excluding hours that are "excessive, redundant, or otherwise unnecessary." *Pérez-Sosa*, 22 F.4th at 321 (punctuation and citation omitted). The court then identifies a reasonable hourly rate (or rates), a determination that is ordinarily based on the prevailing rates in the community for attorneys (or paralegals) with comparable qualifications, experience and competence. *Id.* (punctuation and citation omitted); *see* *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (under 42 U.S.C. § 1988, paralegal fees encompassed in attorneys' fees); *see also* *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 580-581 (2008) (under Equal Access to Justice Act, paralegal fees compensable at prevailing rates).[5]

**\*3** It is the fee-seeker's burden to prove that the proposed hourly rates are reasonable. *Pérez-Sosa*, 22 F.4th at 325. It is also the fee-seeker's burden to prove that the hours expended are reasonable. *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008); *see* *Hensley*, 461 U.S. at 433. Last month, the First Circuit reiterated what has long been the rule here: "[W]hen fee-shifting is in prospect, attorneys are obliged to maintain contemporaneous time records...." *Id.* at 329 (citing *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984)). Records need not be overly detailed; but, typically, they will show the date that the work was performed, the kinds of work performed and the percentage of time spent on each task. *Id.* (citation omitted). Less detail than that inhibits the opponent in challenging the reasonableness of the hours expended and the district court in calculating the lodestar amount. *Id.* (citation omitted).

Properly applied, the lodestar method results in fees that are "presumptively sufficient to achieve the underlying purposes of fee-shifting." *Pérez-Sosa*, 22 F.4th at 321 (punctuation omitted) (quoting *Perdue*, 559 U.S. at 552). A district court's task in fashioning reasonable fees "is to do rough justice, not to achieve auditing perfection." *Id.* at 322 (punctuation and citation omitted).

Ultimately, the district court's discretion with respect to fee awards is "extremely broad;" its equitable determinations will be afforded considerable deference if supported by a plausible rationale. *Pérez-Sosa*, 22 F.4th at 320-321, 332 (punctuation and citations omitted); *see* *Fox v. Vice*, 563 U.S. 826, 838 (2011).

III. Discussion.[6]

A. Fees.

1. Rates and hours.

a. Attorney Chami.

For Attorney Chami's work, Sullivan is seeking $550/hour for 2016-2017, $600/hour for 2018, and $675/hour for

2019-2021. *See* #185-1. Selene proposes a rate of $350/hour. (#187 at 7, 20.)

At most, Selene argues, Attorney Chami's work is compensable at $500/hour. (#187 at 7-8.) In 2017, Selene notes that Attorney Chami represented to the court that as "the Managing Partner of the Price Law Groups, Consumer Litigation practice," he bills at the rate of $500/hour. (#41 at 12.)

Selene also draws the court's attention to orders from the District of Arizona in which Attorney Chami was awarded between $400 and $500/hour. (#187 at 7-8.) *Martinez v. Alltran Financial, LP*, No. 18-cv-04815-PHX-DLR, 2021 WL 1017229 (D. Ariz. Mar. 17, 2021), in particular, was a case involving claims under the FDCPA. The judge found that $500/hour was high but not "outside the bounds of reasonableness for an attorney in the Phoenix community with [Attorney Chami's] experience and skill in consumer protection matters." *Id.* at *2.

Sullivan responds that the court may not consider Attorney Chami's actual billing practices and is limited to the prevailing rates in Boston. (#188 at 4, 6-7.) That is incorrect. The First Circuit has explained:

> In determining the multiplier for a lodestar award—the applicable hourly rate—an inquiring court should look to the prevailing market rates in the relevant community.... When a party recruits counsel from outside the vicinage of the forum court, that court may deem the "relevant community" to be the community in which the lawyer maintains his or her principal office.... In that event, the court may look to the outside lawyer's actual billing practices to determine the relevant rate ...
>
> ***4** ...
>
> In the fee-shifting context, a district court's primary concern is with the market value of counsel's services.... Thus, the rate that private counsel actually charges for her services, while not conclusive, is a reliable indicium of market value.... This proposition in effect allows the court to use counsel's standard rate, or the prevailing market rate in the forum, or a reasonable rate in between....

*United States v. One Star Class Sloop Sailboat*, 546 F.3d 26, 40-41 (1st Cir. 2008) (punctuation and citations omitted); *see Gross v. Sun Life Assurance Co. of Canada*, 880 F.3d 1, 23-24 (1st Cir. 2018); *Gonpo v. Sonam's Stonewalls & Art, LLC,* No. 16-cv-40138-MGM, 2021 WL 1795601, at *3 (D. Mass. April 1, 2021). Consistent with this controlling precedent, the court gives weight to Attorney Chami's previous representation and the *Martinez* order.

From its overall sense of the suit, *seePérez-Sosa,* 22 F.4th at 322, among other things, the court finds that Sullivan's proposed rates of $550-675/hour and Selene's proposed rate of $350/hour are unreasonable. It finds that a rate of $500/hour is reasonable.

To start, drawing data from the 2017-2018 Survey, *see* #185-2,[7] a rate of $500/hour is greater than or equivalent to the following in the Phoenix-Mesa-Scottsdale area: the average rate for all attorneys ($335); the median for attorneys handling credit rights cases ($413); the average rate for attorneys with 6 to 10 and 11 to 15 years[8] of consumer law experience ($400 and $413); and 95% median for all attorneys ($500). (#185-2 at 232-233.)

Drawing data from the 2017-2018 Survey, a rate of $500/hour is greater than the following in the Boston-Cambridge area: the average rate for all attorneys ($288); the median for attorneys handling credit rights cases ($313); the average rate for attorneys with 6 to 10 and 11 to 15 years of consumer law experience ($263 and $300); and 95% median for all attorneys ($388). (#185-2 at 344-345.)[9]

Selene does not contest Attorney Chami's qualifications, *see* #187 at 5, and the court acknowledges his years of litigating consumer protection cases to favorable results. *See* #185-4 ¶¶ 6-23. But, as noted, Sullivan bears the burden of proving the reasonableness of the proposed rates and the record he has developed is insufficient. In his declaration, Attorney Chami does not attest that $550-675/hour is reasonable for FCRA and FDCPA work. Nor does he describe his actual billing practices. Attorney Yousif's and Ms. Lirato's declarations are silent on the proposed rates and actual billing practices.

***5** Attorney Wilcox is licensed in California and does not claim to have litigated consumer protection cases in Arizona or Massachusetts. (#185-7 ¶¶ 1, 16.)[10] He attests: "The market rate in Massachusetts for state and federal litigation of consumer law issues is a range of $300 to $725+ per hour, depending on the skill, experience, and reputation of the attorney. The market rate in the Boston area is generally skewed to the higher end of that rang[e] to account [for] the higher cost of living." *Id.* ¶ 37. He concludes: "Given the prevailing rates in the market, my experience with counsel,

and my experience in litigating fee-shifting cases, I believe that the [ ] rates sought by Mr. Chami in this case are reasonable." *Id.* ¶ 39. Attorney Wilcox does not address the prevailing rates in Arizona or the Phoenix area. In any event, a rate of $500/hour falls comfortably within the identified "range of $300 to $725+ per hour."[11]

Unlike Attorney Wilcox, Attorney Deutsch is Massachusetts-based. (#185-8 ¶¶ 1, 3.) Like Attorney Wilcox, Attorney Deutsch does not address the prevailing rates in Arizona or the Phoenix area. Moreover, Attorney Deutsch does not specifically identify the prevailing rates in Massachusetts or the Boston area. *Id.* ¶ 11. He and Chami were licensed in the same year. *Id.* ¶ 2. Thus, the former's actual billing practices might have been instructive. But he does not describe them.

Judges in this district acknowledge the difficulty in relying on the fees awarded by their colleagues. The determinations are "intrinsically related" to the complexities of the case and the record developed by the fee-seeker. *Smith v. City of Boston*, 496 F. Supp. 3d 590, 598 (D. Mass. 2020) (citing *Riley v. Mass. Dept. of State Police*, No. 15-cv-14137-DJC, 2019 WL 4973956, at *1-2 (D. Mass. Oct. 8, 2019)). The local consumer protection cases cited by Selene are old. *See* #187 at 6.[12] In the most recent, *Tyler v. Michaels Stores, Inc.*, 150 F. Supp. 3d 53 (D. Mass. 2015), Judge Young found that the proposed rate for the class action partners ($650) was unreasonable and reduced it to $350/hour, a rate like that being awarded to "civil rights attorneys—a professional endeavor with analogous complexity, workload, and requisite skill levels." *Id.* at 70. Cases and counsel are different. However, the court's determination that $500/hour is a more reasonable rate than $550-675/hour and $350/hour finds support in the recent civil rights cases involving lawyers with more experience than Attorney Chami and better developed records.[13]

**\*6** Attorney Chami's work accounts for 547.2 of the 618.7 hours on the Fees Summary. *See* #185-1; *see also* #187 at 20. Before looking to the forest, Selene seeks to chop down lots of trees, challenging many of his entries as excessive. In its view, Attorney Chami took too long to review documents; to prepare the complaint and review the answer; to prepare for depositions; to research and draft the oppositions to Selene's initial and renewed motions for summary judgment; to review filings and an order related to Selene's failed attempt to pursue an interlocutory appeal; to prepare motions *in limine* that were filed and a stipulation that was not; and to review motions to extend deadlines. (#187 at 12-16.)

The court agrees with Selene in some respects. First, while it does not believe that, in the circumstances here, Attorney Chami's time for reviewing documents in the earliest stages of the case should be eliminated or reduced simply because Attorney Yousif previously reviewed documents, it does agree that, if Attorney Chami conducted a "detailed" review of documents on May 2, 2016, then he did not need to go "back through" them the next day. *See* #185-1 at 4 (May 2, 2016 entry for 6.8 hours; May 3 for 3.6 hours.) Moreover, the May 3, 2016 entry reads:

> Went back through documents and determined that a possible FDCPA claim existed. Did some preliminary research and discussed possibility of getting credit reports with Client. Believed it was unlikely at the time they were reporting due to age of the delinquency but thought it made sense to check.

*Id.* This is block billing.[14] The court has no idea how much time Attorney Chami spent going back through the documents, doing some preliminary research, or discussing the possibility of getting credit reports with Sullivan. The court excludes 3.6 hours.

The court tallies slightly over a standard 40-hour workweek of time to conduct legal and factual research for the complaint, *see* #1; to draft the complaint; to review the complaint with Sullivan; to continue to draft the complaint; and to review and discuss Selene's answer, *see* #21; *see also* #185-1 at 4-7 (June 20, 2016 entry for 3.0 hours; June 24 entry for 4.1 hours; June 27 entry for 4.6 hours; July 26 entry for 7.4 hours; July 27 entry for 6.9 hours; August 12 entry for 3.1 hours; August 15 entries for 4.5 and 1.6 hours; August 17 entry for 3.9 hours; December 12 entry for 4.1 hours). Given the tasks, this is not unreasonable. *Gabriele v. Southworth*, 712 F.2d 1505, 1507 (1st Cir. 1983) (in evaluating reasonableness, court must "retain sense of overall proportion"). The complaint sets forth detailed factual allegations that would have taken Attorney Chami some additional time to put down on paper and double-check for accuracy. *See* #1 at ¶¶ 10-84. By extension, Selene's answer would have taken Attorney Chami some additional time to consider. The court will not exclude or reduce these hours.

Selene's depositions-related challenge has three branches: travel, preparation, and notices. (#187 at 11-12, 13-14, 15.)[15] First, it seeks to eliminate an entry for 8.3 hours on February 27, 2018 which indicates that Attorney Chami both traveled to and prepared for a deposition; to reduce, by 3 hours, an entry

for 5.2 hours on February 28 which indicates that Attorney Chami both traveled to and took the deposition, for 3 hours; and to eliminate an entry for 4.6 hours on August 7 which indicates that Attorney Chami both traveled to and prepared for another deposition. *See* #185-1 at 13, 15. The court has the discretion to exclude or reduce travel-related time and costs if the fee-seeker does not provide an "articulable reason" for incurring the extra expenses associated with retaining non-local counsel. *Parker v. Town of Swansea*, 310 F. Supp. 2d 376, 395, 400 (D. Mass. 2004) (quoting *Ackerley Comm. of Mass., Inc. v. City of Somerville*, 901 F.2d 170, 171 n.3 (1st Cir. 1990)) (reducing travel time to what which would reasonably be expended by local counsel and applying non-core hourly rate; disallowing hotel costs); *seeGuillemard-Ginorio v. Contreras*, 603 F. Supp. 2d 301, 322-323 (D.P.R. 2009). Sullivan asserts that he chose to retain Attorney Chami because of his reputation and skill; was vindicated; and should not be punished. (#188 at 16-17).[16] The court is unpersuaded. Sullivan, not Selene, will bear the extra expenses associated with his choice. Thus, the court excludes 20.9 hours.[17]

***7** That ruling leaves these challenged deposition-preparation entries: 6.7 hours on February 14, 2018 to review a production for the first deposition; 5.9 hours on February 15 to continue reviewing the production, among other things; 9.1 hours on February 16 to prepare an outline and exhibits for the first deposition; 2.8 hours on February 25 to continue preparing for the first deposition; 7.8 hours on August 5 and 6 to review the transcript of the first deposition, to review a production and to create an outline for the second deposition; and 3.3 hours on August 8 to review exhibits and take the second deposition.[18] (#185-1 at 12, 14.) Thus, excluding the travel-related entries, Attorney Chami spent roughly 8 times the number of hours to prepare for the first deposition (24.5) as the number of hours to take it (3) and roughly 13 times the number of hours to prepare for the second deposition (10.3) as the number of hours to take it (0.8). In the circumstances of this case, the court does not view these ratios as especially egregious and will not exclude or reduce the hours.

Selene argues that Attorney Chami has overbilled for the drafting of two deposition notices, just one of which it has provided to the court. *See* ##187 at 15; 187-2 (first notice); *see also* #185-1 at 12-13 (January 11, 2018 entry for 1.5 hours; April 4 entry for 1.4 hours). The court does not find that the January 11, 2018 entry is unreasonable and cannot evaluate the reasonableness of April 4 entry. It will not exclude or reduce these hours.

The court tallies under a standard 40-hour workweek of time to review Selene's initial motion for summary judgment, *see* ##45-47, and the authorities cited; to draft the initial opposition, *see* #82; to discuss it with Sullivan and Attorney Yousif; and to finalize it. *See* #185-1 at 11-13 (November 2-3, 2017 entry for 5.7 hours; November 3 entry for 4.1 hours; November 5 entry for 6.5 hours; November 7 entry for 10.2 hours; March 6, 2018 entry for 6.7 hours; March 13 entry for 4.8 hours). The court tallies fewer than two standard 8-hour workdays of time to review Selene's renewed motion for summary judgment, *see* #113; to refresh recollection of the authorities cited; and to modify the initial opposition, resulting in the renewed opposition, *see* ##114, 115; *see also* #185-1 at 16 (October 5, 2018 for 4.8 hours; October 15 entry for 8.4 hours). Given the tasks, this is not unreasonable. In the initial opposition, Attorney Chami mounted a substantial defense to Selene's arguments. Selene filed its renewed motion almost 7 months later. In these circumstances, of course counsel would have to jog their memory and, for that matter, update their research. Moreover, contrary to Selene's suggestion, Attorney Chami did make substantive modifications to the renewed opposition, citing additional case law. *Compare* #82 at 9-16; *with* #114 at 9-20. Even if he had not made substantive modifications, he would need time to debate them. Again, Attorney Chami mounted a substantial (and successful) defense. In an 18-page order, this court denied Selene's renewed motion for summary judgment. (#126.) In about the same number of pages, Judge Wolf concurred. (#132.) The court will not exclude or reduce these hours.

Selene filed, *inter alia*, a notice of appeal from Judge Wolf's order denying its renewed motion for summary judgment and a motion to certify. (##139, 145.) Selene takes issue with the time that Attorney Chami spent reviewing those pleadings and researching and drafting the opposition to the motion, as well as the time he spent reviewing undersigned's order denying it *See* #187 at 16 (challenging November 18, 2020 entry for 4.5 hours, November 19 entry for 5.1 hours, November 30 entry for 2.9 hours and January 4, 2021 entry for 2.2 hours). The former entries amount to about one-and-a-half standard 8-hour workdays. Given the tasks, this is not unreasonable. Yet the court agrees that 2.2 hours to review its 6-page order, *see* #150, is unreasonable and will reduce this entry to 0.3 hours, the same amount of time Attorney Chami spent reviewing Judge Wolf's order denying Selene's motion to amend, *see* ##130, 141; *see also* #185-1 at 18 (November 16, 2020 entry).

**\*8** The court agrees with Selene, *see* #187 at 14-15, that Attorney Chami's entries related to the preparation of the four motions *in limine* that do appear on the docket, *see* ##172, 173, 174, 175, and the "stip" that does not, suggest inefficiency. *See* #185-1 at 20-21 (October 8, 2021 entry for 8.1 hours; October 9 entry for 11.3 hours; October 11 entry for 10.8 hours; October 21 entry for 7.5 hours). Given the topics, it should not have taken Attorney Chami almost as much time to prepare the motions (30.8 hours) as it did to prepare the initial summary judgment opposition (38 hours). Moreover, the preparation of a stipulation to exclude certain evidence should not have taken long.[19] The court will reduce these entries from the total 37.7 hours to a total of 16 hours, two standard 8-hour workdays.

The court also agrees with Selene, *see* #187 at 16; *see also* ##187-3, 187-4, that the challenged extension-related entries (*i.e.*, 1.5 hours on November 2, 2021 and 1 hour on November 8) are excessive. *See* #185-1 at 21. The court will reduce the total 2.5 hours to a total 0.5 hours.

Finally, Selene challenges some of Attorney Chami's entries concerning Sullivan's health as unrelated to the litigation. *See* #187 at 16-17 (challenging the February 27, 2020 and April 21 entries, *see* #185-1 at 17). Sullivan responds that these entries are related to the litigation because Selene's illegal debt collection practices led to stress which led to his heart problems. (#188 at 19 n.9.) This argument is unsupported and speculative. Still, the court rejects Selene's challenge. As a general matter, it does not find these entries unreasonable.

Using the lodestar method as to Attorney Chami, the court initially calculates $248,550.00 in fees, based on 497.1 hours at a rate of $500/hour.

b. Attorney Yousif.

Sullivan is seeking $450/hour for Attorney Yousif's work in 2016-2017 and $500/hour for his work in 2018-2021. *See* #185-1. There is insufficient record support for these rates. No attorney, including Yousif, attests that the proposed rates are reasonable. No attorney, including Yousif, describes his actual billing practices. *See* ##185-4, 185-5, 185-7, 185-8. From his declaration, it is clear that while Attorney Yousif has substantial experience in bankruptcy and mortgage-related cases, he has little experience in consumer protection cases. He attests to "grow[ing]" his consumer protection practice from 2019-2021. In that time, he apparently was involved in just a dozen consumer protection cases, helping to resolve 5 and filing 7. (#185-5 ¶¶ 5-10.) The court finds that a rate of $350/hour is reasonable.[20]

According to the Fees Summary, Attorney Yousif spent 62 hours on this case. *See* #185-1. *See also* #187 at 20. Selene seeks to eliminate two of his entries as excessive. (#187 at 12, 16.) On February 2, 2016, Attorney Yousif billed 6.2 hours to review 5 years of bank records. On April 4, he billed 8.3 hours to, among other things, review 6 years of bank records. (#185-1 at 2, 3.) This is not unreasonable. According to the Fees Summary, between February 2 and April 4, Sullivan provided additional documents. *Id.*; *seeid.* (March 31, 2016 entry). The court will not exclude or reduce these hours. The block billing will be addressed below.

**\*9** Attorneys Yousif and Chami both logged time for reviewing exhibits for Sullivan's deposition (1.8 and 1.9 hours, respectively). *See* #185-1 at 18 (January 28, 2021 entries).[21] At this later stage of the case, it was unnecessary for Attorney Yousif to duplicate Attorney Chami's efforts. The court will exclude 1.8 hours.

Selene seeks to exclude two of Attorney Yousif's entries as unrelated to the litigation, *see* #187 at 16-17; specifically, the entry on February 6, 2018 for "Reviewed 1099 and how it works with client," *see* #185-1 at 12 (0.2 hours), and the block billed entry on January 2, 2020 for "Call with client. He has heart problems. Client sent us medicals. Reviewed medicals and sent to Chami," *seeid.* at 17 (1.2 hours). Sullivan offers no argument with respect to the former entry, *see* #188 at 17 n.9, so the court will exclude it. For the reasons discussed above, the court will not exclude the health-related entry.

Using the lodestar method as to Attorney Yousif, the court initially calculates $21,000.00 in fees, based on 60 hours at a rate of $350/hour.

c. Ms. Lirato.

On the one hand, the court rejects Selene's argument, *see* #187 at 11, that Ms. Lirato's administrative work must be completely eliminated.[22] The court has the authority to compensate administrative work at a rate commensurate with its nature; in fact, the First Circuit has cautioned against disallowing such hours. *Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir. 1992) (hours for administrative work

"should not be completely eliminated"); see *AutoZone*, 934 F. Supp. 2d at 353-354 (same; "Courts have generally regarded the following activities as administrative or clerical functions for which proportionate fee deductions ought to be imposed: document preparation, organization, distribution, and copying; drafting emails and other correspondence; data collection; legal cite-checking; scheduling and logistical planning; filing court documents; factual research; and docket review and management") (collecting cases).

On the other, the court accepts Selene's argument, *see* #187 at 9, that Sullivan has not met his burden of proving that a reasonable rate for Ms. Lirato's administrative work in 2017-2018 was $150/hour and that a reasonable rate for her administrative work in 2018-2019 and 2021 was $175/hour. *See* #185-1. Those rates have no support in the record. Ms. Lirato's declaration does not describe her actual billing practices. It provides limited information about her experience at Attorney Chami's firm, which she joined in 2016. It provides no information about her prior experience, if any. *See* #185-6 at ¶¶ 2, 3.[23] The Chami, Yousif, Wilcox and Deutsch declarations are silent on these points.[24]

 **\*10** In the alternative to disallowance, Selene proposes a rate of $100/hour. (#187 at 9 n.4). The court finds that a rate of $125/hour is more reasonable. According to the 2017-2018 Survey, then, the average rate for all paralegals in the Boston-Cambridge area was $100/hour, while the average rate for all paralegals in the Phoenix-Mesa-Scottsdale area was $126/hour. (#185-2 at 344, 232). In this district, judges have found that $125/hour for paralegals and administrative work is reasonable. *See, e.g.*, *Riley*, 2019 WL 4973956, at \*2 (reducing paralegal rate from $175 to $125/hour); *Hermida v. Archstone*, 950 F. Supp. 2d 298, 312 (D. Mass. 2013) (in Mass. Gen. Laws ch. 93A class action, approving rate of $125/hour for administrative work) (citing *Nelson*, 2010 WL 1741072, at \*1-2 (FDCPA)). In *Martinez*, the judge approved a paralegal rate of $130/hour. 2021 WL 1017229, at \*2.[25]

According to the Fees Summary, Ms. Lirato spent 14 hours on this case. *See* #185-1; *see also* #187 at 20. Selene does not object to specific entries as excessive. The court has reviewed them and finds that they are generally reasonable.[26]

Using the lodestar method as to Ms. Lirato, the court initially calculates $1,750.00 in fees, based on 14 hours at a rate of $125/hour.

2. Reduction of hours.

Selene argues that the claimed hours should be reduced by 10% for block and overbilling and the lack of contemporaneous time records. (#187 at 17-18.) The court has the discretion to impose such a reduction. *E.g.*, *Pérez-Sosa*, 22 F.4th at 329-332 (upholding 30% reduction to specific hours for vague entries and 25% percent reduction to all hours for overbilling); *Torres-Rivera*, 524 F.3d at 340 (15% reduction for vague entries and block billing). To fairly account for the block billing and lack of contemporaneous time records, it will exercise that discretion.

Some entries on the Fees Summary properly itemize the time expended on specific tasks.[27] More entries on the Fees Summary improperly lump together the total daily time.[28] The block billing has prevented the court from applying separate rates for the "core" and "non-core" work performed by Attorneys Chami and Yousif. *SeePérez-Sosa*, 22 F.4th at 328 (reaffirming that, generally, "clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them" (punctuation and citation omitted)); *Matalon*, 806 F.3d at 638-640 (district court has discretion to apply, and to decline to apply, separate rates for core work including "legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders" and less demanding, non-core work including "letter writing and telephone conversations" (punctuation and citation omitted)).[29]

 **\*11** The lack of contemporaneous time records is also troubling. Sullivan asserts that such records are not always required; rather than adding up the hours expended and subtracting the excessive ones, the court could isolate specific tasks and determine the reasonable amount of time necessary to accomplish them. (#188 at 12-15.) That is true, as far as it goes. *See United StatesMetro. Dist. Com'n*, 847 F.2d 12, 15-18 (1st Cir. 1988). But Sullivan is not asking the court to isolate specific tasks. He is asking the court to add up the hours expended, as set forth on the Fees Summary. He is asking the court to engage in the specific approach for which, he admits, contemporaneous time records are "important." (#188 at 12-13.) Moreover, he offers no explanation as to why the First Circuit's very recent reminder does not apply here: "[W]hen fee-shifting is in prospect, attorneys are **obliged** to maintain contemporaneous

time records." *Pérez-Sosa*, 22 F.4th at 329 (emphasis added) (citing *Grendel's Den*, 749 F.2d at 952).

Selene clearly raised the lack of contemporaneous time records as grounds for reduction. (#187 at 2, 9-10, 17-18). In response, Sullivan insisted that he had satisfied his burden of proof by submitting the Fees Summary, "a good-faith estimate (based on contemporaneously created electronic time stamps)." (#188 at 15.) A "good faith estimate," without more, inhibits Selene in challenging the reasonableness of the hours expended and the court in calculating the lodestar amount. Presumably, Sullivan could have produced the "contemporaneously created electronic time stamps." He did not.

Applying the 10% reduction, the court now tallies 447.4 hours for Attorney Chami; 54 hours for Attorney Yousif; and 12.6 hours for Ms. Lirato.

3. Apportionment of hours.

Denying Selene's motion to compel production of the settlement agreements with Experian and Rushmore, the court observed: "[T]here is no joint and several liability here." (#125 at 3); *see* #119. Relying on that observation, Selene seeks equal apportionment of hours; specifically, a 66% reduction for hours pre-dating the filing of the complaint (on August 23, 2016);[30] a 66% reduction for some hours pre-dating Experian's dismissal (on December 4, 2017, *see* #64);[31] and a 50% reduction for some hours pre-dating Rushmore's dismissal (on September 6, 2018, *see* #102).[32] (#187 at 18-20.)

*12 Contrary to Sullivan's claim, the law is not "unsettled" in the First Circuit. *See* #188 at 21 (quoting *Dixon v. Int'l Brotherhood of Police Officers*, 434 F. Supp. 2d 73, 89 (D. Mass. 2006)). In 2008, the First Circuit explained:

> Where the plaintiffs have prevailed over more than one defendant, the court must take an additional step: it must determine whether the fee award should run jointly and severally against the defendants or, if not, what portion of the award each defendant should bear.... In cases in which apportionment is the preferred option, there is no uniform prescription as to how to effect that result. Rather, a district court in a multi-defendant case must choose among a variety of modalities. These modalities include equal division among the defendants, division by relative liability, and division by assignment of the time reasonably expended in litigating against each defendant.... The appropriate choice among these modalities depends on the contours and idiosyncrasies of the particular case.... The guiding principle is equity; the district court should strive to determine the most fair and sensible solution for apportioning the fee award....

*Torres-Rivera*, 524 F.3d at 337 (punctuation and citations omitted).[33]

Sullivan prosecuted the claims against Selene, Experian and Rushmore to settlement and thus prevailed against them all. Sullivan and Experian stipulated that the parties would bear their own costs and attorneys' fees. (#64.) Likewise, Sullivan and Rushmore stipulated that the parties would bear their own costs and attorneys' fees. (#102.) It would be unfair to hold Selene wholly responsible for the pre-complaint hours and the post-complaint hours during which Attorneys Chami and Yousif and Ms. Lirato performed work related to Experian and/or Rushmore in addition to Selene. *See Jordan v. Equifax Inf. Srvcs., LLC*, 549 F. Supp. 2d 1372, 1378 (N.D. Ga. 2008) (in FCRA case involving similar procedural posture, on motion for attorneys' fees and costs following acceptance of offer of judgment from Sallie Mae, finding that apportionment between Sallie Mae and Experian and Equifax was necessary to avoid possible windfall to plaintiff; presuming that confidential settlement agreements with Experian and Equifax would have accounted for attorneys' fees); *see also Jordan*, Docket No. 04-cv-10451-GGB, ECF No. 73 (stipulation of dismissal with prejudice as to Experian with each party to bear its own attorneys' fees and costs); ECF No. 161 (same, as to Equifax).

However, the "most fair and sensible" solution here is not necessarily equal apportionment, as Selene argues. In *Jordan*, the case upon which Selene principally relies, the court did not equally apportion the attorneys' fees. It applied the relative liability modality and found that Sallie Mae should be responsible for 40% while Experian and Equifax, combined, should be responsible for 60%. 549 F. Supp. 2d at 1378.

*13 To reach the most fair and sensible solution here, the court will apply two modalities. *See Council for Periodical Distributors Assoc. v. Evans*, 827 F.2d 1483, 1488 (11th Cir. 1987) (district court has discretion to combine modalities of apportionment). Applying a relative liability approach, and given its overall sense of the suit, the court finds that Selene should be responsible for 50% of the pre-complaint hours.[34]

Regarding the post-complaint hours, Sullivan asserts that Attorneys Chami and Yousif and Ms. Lirato would have been required to do that particular work "whether or not" Selene was joined by Experian and Rushmore. (#188 at 22.) Presumably, the converse is true. Attorneys Chami and Yousif and Ms. Lirato would have been required to do that particular work "whether or not" Experian and/or Rushmore were joined by Selene. Thus, the court applies the equal division modality to the post-complaint hours.

Apportioned, the court calculates $204,200.00 in fees for Attorney Chami based on 408.4 hours[35] and a rate of $500/hour; $13,825.00 in fees for Attorney Yousif based on 39.5 hours[36] and a rate of $350/hour; and $1,250.00 in fees for Ms. Lirato based on 10 hours and a rate of $125/hour.[37]

B. Costs.

Selene objects to the entries on the Costs Summary associated with flights and hotels for Attorney Chami and "support staff." According to the court's (and Selene's) tally, those types of entries total $1,924.66. See #185-3; see also #187 at 12. As discussed, the court is not persuaded that it is reasonable to impose on Selene the extra expenses associated with retaining Attorney Chami. It disallows these entries.

Selene does not object to the other entries on the Costs Summary, associated with filing and admission fees, service, depositions, transcripts, printing and mailing. According to the court's tally, those types of entries total $2,648.73. See #185-3.[38] The court allows them, with two exceptions. Interpreting Fed. R. Civ. P. 54 and 28 U.S.C. § 1920, judges in this district have disallowed *pro hac vice* admission costs, if unpersuaded that the fee-seeker's choice of non-local counsel is "fairly chargeable" to the opponent. *See Brigham and Women's Hospital, Inc. v. Perrigo Co.*, 395 F. Supp. 3d 168, 172 (D. Mass. 2019) (punctuation omitted) (quoting *Keurig Inc. v. JPR, Inc.*, No. 11-cv-11941-FDS, 2014 WL 2155083, at *2 (D. Mass. May 21, 2014)); *see also Palomar Technologies, Inc. v. MRSI Systems*, LLC, No. 18-cv-10236-FDS, 2020 WL 4938414, at *2 (D. Mass. Aug. 12, 2020). For the same reason that the court eliminates the travel-related hours and expenses, to which Selene objects, it eliminates the $100 entry on the Costs Summary for Attorney Chami's *pro hac vice* motion. *See* #185-3.

**\*14** Notwithstanding Selene's lack of objection, the court also eliminates the $238 entry on the Costs Summary, associated with Attorney Chami's admission to the bar of the Court of Appeals. *See* #185-3.[39] That expense does seem attributable to Selene's misguided decision to file a notice of appeal from a non-final summary judgment order before seeking (unsuccessfully) to certify the order for interlocutory appeal. *Sullivan v. Selene Finance LP*, First Circuit Docket No. 20-2096, Order (Jan. 13, 2021) (explaining jurisdictional issue and directing Selene to move for voluntary dismissal or to show cause). Yet, in the Court of Appeals, Sullivan and Selene executed a "Stipulation of Voluntary Dismissal Pursuant to F.R.A.P. 42(b) and Local Rule 42(b)" providing that "[e]ach party shall bear its own costs." *Sullivan*, Docket No. 20-2096, Stipulation (Jan. 14, 2021). In determining reasonable costs, the court gives effect to the stipulation.

IV. Conclusion.

Sullivan's petition (#185) is allowed in part and denied in part. The court awards $219,275.00 in attorneys' and paralegal fees and $2,310.73 in costs.

**All Citations**

Slip Copy, 2022 WL 392848

Footnotes

1   With the parties' consent (#138), on November 16, 2020, this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment. (#142.)

2   Selene and Sullivan also frequently clashed over discovery. *E.g.*, ##40, 44, 50, 53, 88, 109, 118, 119, 120, 123, 125.

3   Sullivan's petition is supported by: a summary of hours expended by Attorneys Chami and Yousif and a paralegal, Florence Lirato (#185-1) ("the Fees Summary"); a copy of the United States Consumer Law Attorney Fee Survey Report 2017-2018 (#185-2) ("the 2017-2018 Survey"); a summary of costs (#185-3) ("the Costs Summary"); a declaration of Attorney Chami (#185-4); a declaration of Attorney Yousif (#185-5); and a declaration of Ms. Lirato (#185-6). Sullivan

| | |
|---|---|
| | also filed declarations of Attorneys Ronald Wilcox and Adam Deutsch, both of whom attest that the proposed hourly rates for Attorney Chami's work are reasonable. (#185-7 ¶ 39; #185-8 ¶ 11.) In reply, Sullivan filed a copy of the "Laffey Matrix." (#189.) |
| 4 | See 15 U.S.C. § 1681n(a)(3) ("in the case of any successful action ...," person who willfully violates FCRA is liable to consumer for "the costs of the action together with reasonable attorney's fees as determined by the court"); 15 U.S.C. § 1681*o*(a)(2) (same, for negligent violations); 15 U.S.C. § 1692k(a)(3) ("in the case of any successful action ...," debt collector who violates FDCPA liable to person for "the costs of the action, together with a reasonable attorney's fee as determined by the court"). |
| 5 | Once it is properly calculated, the court may elect to adjust the lodestar, upward or downward, if the specific circumstances of the case warrant. Pérez-Sosa, 22 F.4th at 321 (citation omitted); see Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 & n.3 (1st Cir. 1997) (upward or downward adjustment must be in accordance with twelve factors). |
| 6 | The court rejects Sullivan's repeated claim, see #188 at 10-12, 14-15, 16, 17-19, that Selene is reneging on its offer of judgment by asking the court to eliminate or reduce hours, proposed rates and costs. It is not. Selene's offer, like the FCRA and FDCPA, requires the court to determine reasonable fees and costs. See #177; 15 U.S.C. §§ 1681n(a)(3), 1681*o*(a)(2), 1692k(a)(3). |
| 7 | The court recognizes that the 2017-2018 Survey is based on small data sets. See #185-2 at 206, 208. The court also recognizes that the 2017-2018 Survey is outdated. But Sullivan filed it and he bears the burden of proving the reasonableness of the proposed rates. Pérez-Sosa, 22 F.4th at 321. |
| 8 | Attorney Chami was licensed in Arizona in 2010 and has "focused [his] practice primarily on Consumer Protection cases" since 2015. (#185-4 ¶ 6.) |
| 9 | A rate of $500/hour lies between the median and 95% median for Arizona-wide attorneys handling credit rights cases ($450 and $675) and for Massachusetts-wide attorneys handling credit rights cases ($350 and $700). Id. at 73, 123. |
| 10 | Attorney Wilcox identifies his current rate as $750/hour and attests that he has been approved at rates of $700-750/hour for arbitrations in California. However, Attorney Wilcox has 15 more years of experience than Attorney Chami. (#185-7 ¶¶ 8, 31-32.) |
| 11 | Attorney Wilcox submitted a declaration in support of a proposed rate of $500/hour for Attorney Chami's work in a FDCPA case in the Northern District of California – Parker v. Peters & Freedman, LLP, No. SA CV 17-0667-DFM, 2019 WL 174979, at *3 (N.D. Cal. Jan. 11, 2019). The proposed rate gave the judge "considerable pause." Id. He expressed skepticism that "average rates for partners in consumer services accurately capture FDCPA work." Id. Given the absence of an objection, however, he adopted the proposed rate. Id. |
| 12 | Sullivan does not draw the court's attention to fee awards of $550-675/hour in comparable cases. See ##185, 188. At the hearing, Attorney Chami acknowledged that he has never been awarded more than $500/hour. |
| 13 | See Riley, 2019 WL 4973956, at *1-2 (Title VII; finding sufficient record support for, inter alia, proposed $600/hour rate for senior partner and proposed $525/hour rate for partner); Docket No. 15-cv-14137-DJC, ECF No. 272 (declaration of senior partner, who attested to about 40 years of relevant experience, with exhibits); ECF No. 273 (declaration of partner, who attested to about 25 years of relevant experience, with exhibits); see also Smith, 496 F. Supp. 3d at 598-599 & n. 9 (Title VII; approving $700 and $600/hour rates, respectively, for two partners with similar skills to senior partner in Riley; reducing rates for two associates from $450 and $350/hour to $400 and $300/hour, respectively); see Docket No. 12-cv-10291-WGY, ECF No. 309-1 (declaration of first partner, who attested to about 40 years of relevant experience, and exhibits; also attesting to the qualifications of first associate, with about 15 years of relevant experience); ECF No. 309-2 (declaration of second partner, who attested to about 25 years of relevant experience, and exhibits). |
| 14 | "Block billing" is a practice whereby "an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." E.E.O.C. v. AutoZone, Inc., 934 F. Supp. 2d 342, 354 (D. Mass. 2013) (citation omitted). It is disfavored here. Id. It is also disfavored in Arizona. See, e.g., Jarman v. Am. Family Ins. Co., |

No. 18-cv-00526-PHX-SMB, 2021 WL 1947509, at *5-6 (D. Ariz. May 14, 2021) (reducing hours expended by Attorney Chami's co-counsel in case involving "egregious" block billing). The court addresses block billing *infra*.

15    Selene also seeks to eliminate an entry for 5.8 hours on September 15, 2018 which indicates that Attorney Chami both traveled and met with Sullivan and Attorney Yousif about settlement. (#187 at 11-12); *see* #185-1 at 15. Although not deposition-related, this entry is addressed in this section and excluded.

16    Sullivan attempts to distinguish cases because this case involved an offer of settlement. (#187 at 16.) That is immaterial. Selene has agreed to pay reasonable attorneys' fees and costs as determined by the court. It argues, and the court finds, that the traveled-related expenses are unreasonable.

17    As noted, Attorney Chami reports doing work while he traveled. But, as Selene argues, *see* #187 at 11 n.8, with the exception of the February 28 entry, these are block billed. Sullivan has failed to provide any documentation in support of his travel-related hours and expenses beyond the Fees and Costs summaries.

18    Selene has submitted the cover sheet of the second deposition transcript indicating that it lasted 48 minutes and that one exhibit was introduced. (#187-1 at 2-4.)

19    The court cannot address Selene's argument that Attorney Chami misdated and overbilled an October 29, 2021 meet-and-confer because counsel has not produced the "record" that supports it. *See* #187 at 15. The October 21 entry is blocked billed. *See* #185-1 at 21.

20    Selene proposes a rate of $300/hour. (#187 at 9, 20.) This proposal is consistent with the 2017-2018 Survey. Then, for the Boston-Cambridge area, the median rate for all attorneys was $300/hour while the median rate for attorneys handling credit rights cases was $313/hour. For attorneys, like Yousif, with 1 to 3 years of consumer protection experience, the average rate was $175/hour. (#185-2 at 344-345.) But Attorney Yousif performed work in 2018-2021, too. A rate of $350/hour is consistent with the rates that judges in this district have more recently approved for less experienced civil rights attorneys. *See, e.g.*, *Smith*, 496 F. Supp. 3d at 598 ($300 and $400); *Riley*, 2019 WL 4973956, at *2 ($350).

21    There are more entries like these. *E.g.*, #185-1 at 11 (November 9, 2017). However, Selene has not challenged them and the court does not believe that the failure to exclude or reduce such entries removes its ultimate fee award from "the realm of reasonableness, broadly defined." *Foley v. City of Lowell*, 948 F.2d 10, 21 (1st Cir. 1991) (when opponent fails to offer proof or persuasive argument, it is not district court's role "either to do [opponent's] homework or to take heroic measures aimed at salvaging [opponent] from the predictable consequences ...").

22    There are 30 entries on the Fees Summary for Ms. Lirato and nearly all of them describe administrative work such as making calls and receiving, downloading, saving, reviewing, printing, filing and sending documents. *See generally* #185-1. The rest of the entries are vague and will be presumed to entail similar work. *See id.* at 6 (August 23, 2016 entry); *id.* at 10 (October 17, 2017); *id.* at 12 (February 2, 2018); *id.* at 14 (April 27); *id.* at 15 (September 24); *id.* at 16 (October 4); *id.* (October 19); *id.* (July 25, 2019).

23    The court disagrees with Selene, *see* #187 at 9, that Ms. Lirato must be removed from the equation because her declaration is inadequate. In the case Selene cites – *Jarman*, 2021 WL 1947509, at *5-6 – Ms. Lirato did not submit any declaration. *Id.* at *6. Here, she did submit a declaration, albeit a limited one.

24    The court rejects Sullivan's reliance on the Laffey Matrix, *see* #189, which, he acknowledges, *see* #188 at 9-10, is based upon rates in the District of Columbia and generally not used in this district. *See Gardner v. Simpson Financing Ltd. Partnership*, 963 F. Supp. 2d 89, 94-95 (D. Mass. 2013); *AutoZone*, 934 F. Supp. 2d at 2358 n. 16.

25    Of note, the judge in *Martinez* actually disallowed hours for administrative work. *Id.* at *3.

26    Ms. Lirato billed 0.3 hours to send a notice of a deposition to Selene. *See* #185-1 at 13 (April 4, 2018 entry). She billed 0.3 hours to send a notice of deposition to a witness. *See id.* (April 6). She billed 1 hour to file the motions *in limine*. *See* #185-1 at 21 (October 29, 2021). These unchallenged entries are questionable. But the court does not believe that the failure to exclude or reduce them removes its ultimate fee award from the reasonableness universe.

27  *E.g.*, #185-1 at 2 (January 13, 2016); *id.* at 8 (June 28, 2017); *id.* at 12 (January 15, 2018); *id.* at 19 (February 18, 2021).

28  *E.g.*, #185-1 at 3 (April 4, 2016); *id.* (May 25); *id.* at 7 (January 3, 2017); *id.* at 10 (October 13); *id.* at 11 (November 5); *id.* at 13 (February 27); *id.* at 14 (April 30); *id.* at 15 (August 7); *id.* (August 8); *id.* (September 15); *id.* at 18 (January 29, 2021); *id.* at 22 (December 4).

29  In both block billed and properly itemized entries, counsel seek their full hourly rates for non-core work, including obtaining and sending documents, drafting emails, and scheduling and logistical planning. *E.g.*, #185-1 at 3 (March 3, 2016 entry); *id.* (April 4); *id.* at 4 (May 20); *id.* (May 25); *id.* at 6 (October 31); *id.* at 7 (November 16); *id.* at 7 (Jan-17); *id.* (Feb-17); *id.* (Apr-17); *id.* (May-17); *id.* at 8 (June 5); *id.* (July 11); *id.* at 9 (July 25); *id.* (August 7); *id.* (August 13); *id.* at 10 (October 4); *id.* (October 13); *id.* (October 24); *id.* at 12 (January 15, 2018); *id.* at 15 (September 24); *id.* at 18 (October 14, 2020); *id.* (January 19, 2021); *id.* at 19 (February 1); *id.* at 20 (July 8).

30  By the court's count, pre-complaint, Attorney Chami logged 79.8 hours; Attorney Yousif logged 26.8 hours; and Ms. Lirato logged 4 hours. *See* #185-1 at 2-6. According to Selene, however, Attorney Chami logged 72 hours pre-complaint. (#187 at 19, 20 n.14). Presumably, Selene is omitting the entry on August 11-12, 2016 for 7.8 hours which indicates that Attorney Chami reviewed documents "to verify allegations in the complaint and confirm that Selene account information was inaccurate." (#185-1 at 6.) The court also omits that entry. Of course, what has already been excluded cannot be apportioned. Given the exclusion of the entry on May 3, 2016, the 72 pre-complaint hours are reduced to 68.4. Moreover, according to Selene, Attorney Yousif logged 27 hours pre-complaint. (#187 at 19, 20 n.14.) The court is unable to explain the discrepancy. It uses 26.8 hours. Such nominal differences do not remove its ultimate fee award from the reasonableness universe.

31  Selene identifies 18 entries totaling 7.3 hours primarily related to the motion for *pro hac vice* admission and Rule 26(f) and Rule 16 conferences and reports. *See* #187 at 20 & n.12 (challenging January 3, 2017 entries; January 4; Jan-17; Feb-17; Apr-17; May-17; June 5; June 16; June 20; June 17; July 11; July 21; July 24; October 4; November 2). Breaking the hours down, Selene seeks a 66% reduction of 5.1 hours for Attorney Chami; 1.7 hours for Attorney Yousif; and 0.5 hours for Ms. Lirato.

32  Selene identifies 3 entries totaling 3.1 hours related to the protective order. *See* #187 at 20 & n.13 (challenging November 17, 2017 entry; November 30; December 4). Breaking the hours down, Selene seeks a 50% reduction of 2.8 hours for Attorney Chami and 0.3 hours for Ms. Lirato.

33  The Court of Appeals went on to hold that, as a matter of law, the district court should have applied the default "time expended" modality rather than the "relative liability" one. *Id.* at 337, 339. In that case, the less-culpable defendant had mounted a vigorous defense while the more-culpable defendant had defaulted. *Id.*

34  Because Selene mounted the most vigorous defense, the court does not have to apply the time expended modality. *See Torres-Rivera*, 524 F.3d at 337, 339. Moreover, to attempt to apply that modality, it would have to engage in "complex mini-litigation." *Jordan*, 549 F. Supp. 2d at 1378 (punctuation omitted) (quoting *Council for Periodical Distributors*, 827 F.2d at 1488).

35  447.4 hours less 50% of 68.4 hours (34.2) less 66% of 5.1 hours (3.4) less 50% of 2.8 hours (1.4).

36  54 hours less 50% of 26.8 hours (13.4) less 66% of 1.7 hours (1.1).

37  12.6 hours less 50% of 4 hours (2) less 66% of 0.5 hours (0.33) less 50% of 0.5 hours (0.25), rounded down.

38  Sullivan mistakenly seeks $4,576.39 when his Costs Summary sets forth entries which total $4,573.39. *Compare* #185 at 1 *with* #185-3. Selene repeats this mistake in opposition. *See* #187 at 20.

39  *See* https://www.ca1.uscourts.gov/sites/ca1/files/barnumB.pdf (last visited Feb. 8, 2022).

---

**End of Document**                                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.